

```
STEVEN H. FELDERSTEIN, State Bar No. 056978
PAUL J. PASCUZZI, State Bar No. 148810
FELDERSTEIN FITZGERALD WILLOUGHBY &
PASCUZZI LLP
400 Capitol Mall, Suite 1450
Sacramento, CA  95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435

Attorneys for Large Scale Biology Corp., et. al
```



FILED

MAR 2 7 2006

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>LARGE SCALE BIOLOGY CORPORATION,<br><br>Debtor.<br><br>Tax ID #77-0154648 | CASE NO. 06-20046<br>Jointly Administered<br>Chapter 11<br><br>DCN: FWP-10<br><br>Date:   March 27 2006<br>Time:   9:00 a.m.<br>Crtrm:  28 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF
ORDER AUTHORIZING SALE OF OWENSBORO PROPERTY PURSUANT TO ASSET
PURCHASE AGREEMENT FREE AND CLEAR OF INTERESTS; PAYMENT OF
UNDISPUTED LIENS; GRANTING REPLACEMENT LIENS ON PROCEEDS OF SALE
FOR DISPUTED LIENS; AND RELATED RELIEF**

The motion of Large Scale Biology Corporation ("LSBC") and Large Scale Bioprocessing, Inc. ("LSBI"), debtors and debtors in possession in the Chapter 11 bankruptcy cases pending before this Court (collectively, the "Debtors"), for authority to sell the Debtors' Owensboro facility (the "Owensboro Facility") and related assets free and clear of interests pursuant to an asset purchase agreement, to pay all undisputed liens, to grant replacement liens on the sale proceeds for any disputed liens, and for other relief specified therein (the "Motion") came on for hearing on March 27, 2006, at 9 a.m. (the "Sale Hearing"). The Debtors appeared by and through their attorney of record Paul J. Pascuzzi. All other appearances were noted on the record. Having given due consideration to the Motion, the declarations and other evidence submitted in support of the Motion, any opposition and/or response filed, the record and proceedings in the

above-captioned case, any stipulations recited in open court, the arguments of counsel and other interested parties at the hearing, and for other good cause shown, the Court hereby finds, as a matter of fact, and concludes, as a matter of law as provided under Federal Rules of Bankruptcy Procedure[1] 7052 and 9014, in addition to any findings and conclusions stated orally on the record, as follows:

1. On January 9, 2006, the Debtors filed petitions under chapter 11 of the United States Bankruptcy Code. No trustee has been appointed.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334 and authority under 11 U.S.C. §§ 363 and 105 to approve the sale of the Debtors' Owensboro Facility and related assets (the "Acquired Assets") located at 3700 Air Park Drive, Owensboro, Kentucky, which is the subject of the Motion, free and clear of (1) any unrecorded equitable or legal interests in the Acquired Assets asserted by any person or entity, or their respective predecessors and successors in interest, unless otherwise expressly provided for by the Order entered herewith; (2) the claims or interests asserted by any person or entity, or their respective predecessors and successors in interest, against the Debtors which do not constitute liens against or interests in the Acquired Assets; and (3) the claims or interests asserted by any person or entity, or their respective predecessors and successors in interest, evidenced by the liens, encumbrances and interests of record set forth in paragraph 8 below, and to authorize the Debtors on behalf of the estates in the above-captioned cases to enter into and perform in accordance with the Asset Purchase Agreement dated February 24, 2006 (the "APA"), a copy of which is attached as Exhibit A to the Order entered herewith on the Motion. The Motion is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A), (N), and (O). The statutory predicates for the relief requested in the Motion are 11 U.S.C. §§ 363 and 105, and Bankruptcy Rules 2002, 6004 and 9014.

3. All objections, if any, to the Motion and to the approval of the APA, including the transactions contemplated thereby, have been withdrawn, resolved, or overruled.

---

[1] All subsequent references to the Federal Rules of Bankruptcy Procedure and Interim Federal Rules of Bankruptcy Procedure herein shall be to the "Bankruptcy Rules." In addition, all capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion and the Asset Purchase Agreement.

4. The Acquired Assets are situated primarily in Owensboro, Kentucky, described more fully in the APA.

5. As set forth in the declarations of service filed with this Court in connection with the Motion, notice of the hearing on the approval of the Motion (the "Notice") was duly served on (a) all creditors and interested parties, including parties requesting special notice, that are required to receive notice pursuant to the Order Limiting Notice entered by the Court on January 20, 2006, (b) each entity known to the Debtors to assert or potentially assert a lien, encumbrance or other interest in, or claim to, the Acquired Assets that is affected by the Order on the Motion, and (d) the Office of the United States Trustee, all in accordance with applicable Bankruptcy Rules 2002(a)(2), 2002(c)(1), 2002(d), 2002(i), 2002(k), 6004(a) and 6004(c). Each entity known to the Debtors to assert or potentially assert a lien, encumbrance, claim or other interest in or to the Acquired Assets that is affected by the Order on the Motion was also served with a complete copy of the Motion, and all supporting declarations and pleadings filed by the Debtors in connection with the Motion.

6. The Notice (a) complied in all respects with the requirements of the Bankruptcy Code and the Bankruptcy Rules; (b) fully and adequately described the relief requested in the Motion including the overbidding procedures and set forth the means by which the Motion, and all supporting declarations and pleadings filed by the Debtors in connection with the Motion, could be obtained promptly by a party in interest; (c) provided fair and reasonable notice under the circumstances of this case with respect to deadlines and procedures for objecting to the relief requested in the Motion; and (d) set forth the time, date and place for the hearing on the Motion.

7. The proposed sale involves substantially all of the assets of LSBI. Accordingly, pursuant to Bankruptcy Rule 2002(d)(3), notice of the Motion was served on LSBI's only shareholder, LSBC.

8. The Acquired Assets are subject to the liens, encumbrances and other interests of record that were set forth in the title report (the "Title Report") issued by Wyatt Tarrant & Combs as of January 19, 2006, and listed in the Declaration of Robert Erwin filed in support of the Motion and as otherwise known to the Debtors, including the following:

a. All liens, claims and encumbrances of Kentucky Technology, Inc. ("KTI"), including without limitation a Mortgage, Security Agreement and Financing Statement;

b. All liens, claims and encumbrances of Agility Capital, LLC ("Agility"), including without limitation a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Financing Statement;

c. All liens, claims and encumbrances of Kevin J. Ryan, IRA ("Ryan"), including without limitation a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Financing Statement;

d. All liens, claims and encumbrances of Robert L. Erwin, IRA ("Erwin"), including without limitation a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Financing Statement; and

e. All liens, claims and encumbrances of Earl L. White ("White"), including without limitation a Security Agreement and Financing Statement.

9. In the Motion, the Debtors contended that a bona fide dispute existed as to the validity, amount and priority of the claim of Agility. Since the filing of the Motion, the Debtors and Agility have entered into a settlement agreement which resolves the disputes. By separate motion, the Debtors have obtained Court approval of the settlement agreement with Agility.

10. Within the meaning of 11 U.S.C. §363(f)(2), KTI, Agility, Ryan, and Erwin consented to the sale of the Acquired Assets free and clear of any and all their liens, encumbrances or interests in the Acquired Assets, including, without limitation, those liens, encumbrances or interests of such party listed in Paragraph 8 above in exchange for payment of the amounts stated in the Order and the other provisions of the Order.

11. The lien held by White does not attach to any of the Acquired Assets. White's lien on other property of the LSBC and Predictive Diagnostics, Inc. ("PDI") estates shall remain unaffected.

12. Within the meaning of 11 U.S.C. §363(f)(3), the purchase price of the Acquired Assets is greater than the aggregate value of all liens on the Acquired Assets.

13. Within the meaning of 11 U.S.C. §363(f)(4), the interests of any and all

unrecorded liens or encumbrances ("Unrecorded Liens"),[2] including those liens, encumbrances or other interests of any party listed in Paragraph 8 above, are subject to bona fide dispute based on the following:

  a. With respect to Unrecorded Liens, the filing of the Chapter 11 cases cut off the perfection rights of those unknown creditors and gave the estate the status of a bona-fide purchaser without notice of any such Unrecorded Liens. 11 U.S.C. § 544; *In re Bedford Square Associates*, L.P., 247 B.R. 140, 144-45 (Bankr. E.D. Pa. 2000) (Section 544(a)(3) allows the trustee to stand in the shoes of a bona fide purchaser and avoid any unrecorded interest). Even though the Debtors have not commenced an action to avoid any Unrecorded Liens, the fact that it could successfully avoid the interest is sufficient to establish that a "bona fide dispute" exists for purposes of section 363(f)(4). *Id.* at 145.

  b. With respect to any statutory liens that may arise under state law based on the Debtors' insolvency proceedings or otherwise, such liens are avoidable under section 545. The Debtors are not aware of anyone asserting any Unrecorded Liens and no party asserted such a lien in connection with the Motion. If any such liens exist, they are disputed and a sale free and clear of the Unrecorded Liens is appropriate pursuant to section 363(f)(4).

14. All taxes that are secured claims against the Acquired Assets and other charges payable by the Debtors under the APA and that are due and payable upon transfer are entitled to immediate payment out of the sale proceeds and thus any secured tax liens are removed from the Acquired Assets upon such payment.

15. The Debtors have engaged in fair and reasonable marketing and other sale efforts and procedures in connection with the sale of the Acquired Assets, which efforts and procedures have enabled the Debtors to obtain a fair and reasonable price for the Acquired Assets under the circumstances of this case. In connection with the proposed sale, the Debtors have complied with all sale procedures established or required by this Court.

16. The highest and best offer to purchase the Acquired Assets was the one received from Owensboro Medical Health System, Inc. or its designee, including Kentucky BioProcessing,

---

[2] Unrecorded Liens also include any purported liens based on state law for unpaid wages.

LLC (collectively, the "Purchaser" or "OMHS") to purchase the Acquired Assets for a purchase price of $6,400,000 on the terms and conditions set forth in the APA.

17. The terms and conditions of the sale transaction as provided for in the APA are fair and reasonable; entry into the APA is a sound exercise of the Debtors' reasonable business judgment; and, the sale transaction contemplated by the APA is in the best interests of the creditors, interest holders and the estates. With respect to LSBI, there are sound business justifications for conducting the sale prior to confirmation of a plan including, without limitation:

   a. The Debtors have tried to sell the Owensboro Facility for over 18 months, and they were negotiating with OMHS when their bankruptcy cases were filed. The Debtors do not have sufficient resources to operate and preserve the going concern value of the facility and other assets. Selling the Acquired Assets as soon as possible will provide sufficient funds to: i) pay most of the Debtors' secured debt; ii) preserve the value of the remaining assets; and iii) administer the liquidation or reorganization of the remaining assets of the estates.

   b. The Debtors are currently assessing their liquidation and reorganization prospects. The Debtors laid off most of their employees before filing chapter 11, but they contemplate continuing minimal operations to support certain valuable contracts. Those contracts will provide a sufficient income stream while the Debtors formulate a plan of reorganization around their substantial intellectual property portfolio. The Debtors do not have the funds necessary to operate the Owensboro Facility, which is why it was necessary to borrow funds from OMHS. Selling the facility now retains as much of its going concern value as possible. Any further delay would harm the facility's value to the detriment of the creditors. The sale of the Owensboro Facility will not impede the Debtors' plans to reorganize or liquidate their remaining assets, since the Facility is distinct from the Debtors' other business opportunities.

   c. The Owensboro Facility, including the personal property that makes up the Acquired Assets, is used by the Debtors for the extraction, production and processing of plant made proteins. This is a highly specialized facility that requires highly specialized equipment and complex intellectual property.

   d. OMHS, a Kentucky non-profit corporation, is purchasing the Owensboro

Facility to continue its current use. In the few weeks after the LOI was signed, Debtors engaged in serious, time consuming negotiations with OMHS over what personal property OMHS needed to operate the facility, while allowing the Debtors to retain maximum flexibility to use its intellectual property in the future.

   e. It is likely that there are few other parties with the desire or resources to purchase the facility for the price agreed to by OMHS, given the specialized nature of the facility. Many of the companies that would be interested in using the Owensboro Facility for its intended purpose were contacted by the Debtors prior to entering into the LOI, as described in detail below.

   f. During the last 18 months, LSBC has engaged in extensive efforts to interest others in acquiring or making a strategic investment in the Owensboro Facility, including the biomanufacturing assets, real property, manufacturing building, equipment and fixtures. LSBC contacted numerous companies involved in the production of plant-made pharmaceuticals or in the contract manufacturing of biologics, and attempted to solicit their interest in such an investment or acquisition. Each of those parties was served with the Motion and the notice of opportunity to overbid. Despite these efforts, only OMHS made a formal offer to purchase the Owensboro Facility or signed a letter of intent, Term Sheet or similar document, and only OMHS demonstrated the credibility, resources and resolve necessary to complete the transaction.

   g. The Debtors have received inquiries from other companies looking to purchase distressed assets out of bankruptcy cases. After execution of a non-disclosure agreement to ensure the preservation of any confidential information, these parties have been provided a due diligence package which includes description of the tangible assets at the Owensboro Facility and a two year old appraisal of those assets. These parties include Bid It Up Auctions & Appraisals and Michael Fox International. In the Debtors' opinion, a party like OMHS looking to use the facility for that for which it was designed would be likely to pay more for the facility than a buyer interested in distressed assets. The Debtors have been responsive to any interested parties that have contacted them, without breaching the terms of the LOI. The Motion was served on anyone who had contacted the Debtors expressing interest in the

Owensboro Facility. In addition, LSBC has filed an 8-K with the Securities and Exchange Commission regarding the filing of the motion to approve the sale.

   h. The Debtors' counsel conducted affirmative research to locate potential commercial real estate brokers or other parties that deal with biotech or pharmaceutical properties. Each of the parties located were sent the notice of the Motion and overbid opportunity.

   i. Given these circumstances, the Debtors have established the need to sell the Owensboro Facility now because there is a sound business justification supporting the sale, the sale is in good faith and upon reasonable notice, and the sale is in the best interests of the estates.

  18. The APA requires as a condition to OMHS' obligation to close the sale that the Court make a finding that there are no material duties remaining to be performed by LSBC or LSBI in relation to the intellectual property rights acquired by OMHS and a conclusion that the licenses conveyed are not executory contracts. Given the terms of the license agreements, which have been submitted to the Court as part of the APA, the Court hereby finds that there are no material duties remaining to be performed by LSBC or LSBI in relation to the intellectual property rights acquired by OMHS and concludes that the licenses conveyed are not executory contracts.

  19. The purchase price for the Owensboro Facility is properly allocated as follows based on evidence submitted in support of the Motion: property owned by LSBI is allocated 74.2% of value; property owned by LSBC is allocated 25.8% of value. Payment of the following claims shall be made from the sale proceeds as more specifically provided in the Order:

   a. LSBI proceeds of $4,750,080 shall be used to pay KTI approximately $3,015,999, Erwin approximately $263,411, Ryan approximately $790,641, a portion of the OMHS advance of $200,000, $150,000 to pay a portion of the Agility claim, $200,000 of the FFWP hybrid fee, secured property taxes of approximately $34,000 and any other closing obligations payable by the Debtors under the APA, leaving approximately $96,000 cash in LSBI;

   b. LSBC proceeds of $1,649,920 shall be used to pay the balance of the

OMHS advance of approximately $50,000, the balance of the Agility claim in the amount of $500,000, a further portion of the FFWP hybrid fee in the amount of $145,000, and the creditors' committee retainer deposit of $100,000, leaving approximately $854,920 of cash in LSBC.

c. This allocation is in the best interests of the estates. It is entirely consistent with the prior appraisal allocations and the APA, and adequately protects all creditors. It is not economically feasible to hold all the sale proceeds while obtaining a new appraisal of assets that will no longer be owned by the Debtors due to the cost of such an appraisal and the increased interest and other charges accruing on the secured debt. In addition, allocation adjustments would not significantly affect creditors because KTI is in first priority and holds both real and personal property collateral. Any adjustments would simply pay KTI from different sources, but not significantly affect the amount or how creditors were paid. The Debtors believe that the only creditor other than the secured creditors of LSBI is Robert Erwin, who holds an unsecured claim in the amount of $90,000. Mr. Erwin's claim is also against LSBC. Any excess proceeds over and above those necessary to pay creditors in LSBI would go to LSBC as the sole shareholder of LSBI. The $200,000 allocation of the FFWP hybrid fee is based on the formula for calculating the fee of 5% of the payments to secured debt. Since the secured debt being paid is approximately $4 million, 5% of that amount is $200,000. This allocation is acceptable to the Creditors' Committee.

20. OMHS is unrelated to the Debtors. The APA was negotiated, proposed, and entered into by the parties at arms-length, without collusion, and in good faith. Neither the Debtors nor OMHS has engaged in any conduct that would cause or permit the APA, or the transactions contemplated thereby, to be invalidated or avoided under 11 U.S.C. § 363(n).

Dated: 27 March 2006

UNITED STATES BANKRUPTCY COURT JUDGE