

FILED

NOV 14 2007

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re:

LARGE SCALE BIOLOGY
CORPORATION, et al,

           Consolidated Debtor.

Tax ID #77-0154648

CASE NO.  06-20046-A-11
Jointly Administered
Chapter 11

DCN:  FWP-44

Date:      October 15, 2007
Time:      9:00 a.m.
Crtrm:    28

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF
ORDER GRANTING MOTION TO APPROVE AUCTION PROCESS, SALE AND
ASSIGNMENT OF CERTAIN PATENTS, PATENT APPLICATIONS AND RELATED
ASSETS FREE AND CLEAR OF INTERESTS AND RELATED RELIEF**

      The motion of Large Scale Biology Corporation et al. (the "Consolidated Debtor") to

approve an auction process and the sale and assignment of certain patents, patent applications and

related relief pursuant to an Asset Purchase Agreement providing for the sale of the VCP Assets

(the "APA") free and clear of interests and for other relief specified therein (the "Motion") came

on for continued hearing on October 15, 2007, at 9 a.m. (the "Sale Hearing").  The Consolidated

Debtor appeared by and through its attorney of record, Paul J. Pascuzzi.  All other appearances

were noted on the record.

      The Court hereby finds, as a matter of fact, and concludes, as a matter of law as provided



1  under Federal Rules of Bankruptcy Procedure[1] 7052 and 9014 as follows:

2      1.      On January 9, 2006, the Large Scale Biology Corporation and two of its

3  subsidiaries filed petitions under chapter 11 of the United States Bankruptcy Code.  No trustee

4  has been appointed.  The Debtors' First Amended Joint Plan of Liquidation, as modified, was

5  confirmed by order of this Court entered October 12, 2006, and went effective on October 23,

6  2006 (the "Plan").  The Plan provides in section 6.3 that transactions outside the ordinary course

7  of business shall be approved by the Court, except transactions that have a net effect of less than

8  $25,000.  Because the transaction contemplated by the Motion has a net effect of more than

9  $25,000, Court approval of the Motion is necessary.

10      2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157

11  and authority under 11 U.S.C. §§ 105, 363, and 365 to approve the sale to Kentucky

12  BioProcessing, Inc. ("KBP") of all of the Consolidated Debtor's right, title and interest in and to

13  certain patents and patent applications relating to the production of Peptides in Plants as Viral

14  Coat Protein Fusions or Chemical Conjugation and Assembly as well as the inventions that were

15  claimed and disclosed in such patents and patent applications (collectively, as more fully

16  described in the APA, the "VCP Assets") for $400,000, and to authorize the Consolidated Debtor

17  to enter into and perform in accordance with the APA, a copy of which is attached as Exhibit A to

18  the order entered herewith on the Motion (the "Order on the Motion").  This matter concerns the

19  administration of the bankruptcy estates herein, and accordingly, this is a core proceeding

20  pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O). The statutory predicates for the relief requested in

21  the Motion are 11 U.S.C. §§ 105, 363, and 365, and Bankruptcy Rules 2002, 6004, 6006 and

22  9014.

23      3.      All objections, if any, to the Motion and to the approval of the APA, including the

24  transactions contemplated thereby, have been withdrawn, consensually resolved, or overruled.

25      4.      As set forth in the declarations of service filed with this Court in connection with

26

27  [1]  All subsequent references to the Federal Rules of Bankruptcy Procedure and Interim Federal
    Rules of Bankruptcy Procedure herein shall be to the "Bankruptcy Rules."  In addition, all
28  capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion and
    the Asset Purchase Agreement attached to the order on the Motion as Exhibit A.

FINDINGS OF FACT AND CONCLUSIONS
OF LAW RE VCP ASSETS SALE

-2-

the Motion, notice of the hearing on the approval of the Motion (the "Notice") was duly served on (a) all creditors and interested parties, including parties requesting special notice, that are required to receive notice pursuant to the Order Limiting Notice entered by the Court on January 20, 2006, (b) each entity known to the Consolidated Debtor to assert or potentially assert a lien, encumbrance or other interest in, or claim to, the VCP Assets or any executory contract that is affected by the Order on the Motion, and (c) the Office of the United States Trustee, all in accordance with applicable Bankruptcy Rules 2002(a)(2), 2002(c)(1), 2002(d), 2002(i), 2002(k), 6004(a) 6004(c) and 6006(c).  Each entity known to the Consolidated Debtor to assert or potentially assert a lien, encumbrance, claim or other interest in or to the VCP Assets or any executory contract that is affected by the Order on the Motion also was served with a complete copy of the Motion, and all supporting declarations and pleadings filed by the Consolidated Debtor in connection with the Motion.

5.    The Notice (a) complied in all respects with the requirements of the Bankruptcy Code and the Bankruptcy Rules; (b) fully and adequately described the relief requested in the Motion including the overbidding procedures and set forth the means by which the Motion, and all supporting declarations and pleadings filed by the Consolidated Debtor in connection with the Motion, could be obtained promptly by a party in interest; (c) provided fair and reasonable notice under the circumstances of this case with respect to deadlines and procedures for objecting to the relief requested in the Motion; and (d) set forth the time, date and place for the hearing on the Motion.

6.    The Court approved sale procedures for the Motion by order dated July 2, 2007. As part of such approval, the Court directed the Consolidated Debtor to apply the overbid procedures so approved with flexibility, with the overall interests of the estate in mind.  Further, the Court directed that the Consolidated Debtor not automatically reject overbids that are different in form and terms from the initial purchaser bids, without first analyzing the overall benefit to the estate.  See Ruling on Motion to Approve Sale Procedures for Sale of Viral Coat Protein and Geneware, FWP #39, dated July 2, 2007, which is hereby adopted as part of the record in this matter.  Subsequently, the Consolidated Debtor filed the Motion, which set forth different bidding

procedures for the sale of the VCP Assets, which the court finds are in the best interests of the estate.

7.    The Sale Hearing was originally scheduled hearing on September 4, 2007, and was continued to September 25, 2007. By unopposed application of the Consolidated Debtor, the Court approved a further continuance of the Sale Hearing to October 1, 2007. At the hearing on October 1, 2007, the Court approved a continuance of the Sale Hearing to October 15, 2007. At the hearing on October 1, 2007, no objection was raised to the continuance to October 15, 2007 either at such hearing or prior thereto, by any party appearing (including Fraunhofer USA, Inc. "Fraunhofer").

8.    The Motion seeks an order authorizing the sale of the VCP Assets pursuant to Bankruptcy Code section 363(f) free and clear of all liens, claims, interests, and other encumbrances, including without limitation the following:

a.    Any and all liens, claims, interests, and encumbrances of Kevin J. Ryan, Kentucky Technology, Inc., Agility Capital, LLC, Earl L. White, Robert Erwin IRA, and Kevin Ryan IRA, as such liens either do not attach to the intellectual property or have been satisfied in full;

b.    The lien of Woodlawn Foundation with such lien to attach to the proceeds of sale;

c.    Any statutory liens that may arise under nonbankruptcy law based on the Consolidated Debtor's insolvency proceedings or otherwise;

d.    Any and all liens, claims, interests, and encumbrances of any person served with the Motion on the ground that such liens are in bona fide dispute; and

e.    All unrecorded liens to the extent such liens were required to be recorded to be perfected on the intellectual property.

9.    The Motion was properly served on all identified parties as to which the Consolidated Debtor seeks sale approval free and clear of liens, claims, interests and encumbrances. Also, Woodlawn Foundation has filed an acknowledgement of receipt of and consent to the Motion. Thus, the Court will approve the sale free and clear of the following liens

and interests:

a.    Any and all liens, claims, interests, and encumbrances of Kevin J. Ryan, Kentucky Technology, Inc., Agility Capital, LLC, Earl L. White, Robert Erwin IRA, and Kevin Ryan IRA, as such liens either do not attach to the intellectual property or have been satisfied in full;

b.    The lien of Woodlawn Foundation with such lien to attach to the proceeds of sale; and

c.    Any and all liens, claims, interests, and encumbrances, whether arising statutorily or otherwise, known or unknown, recorded and/or otherwise perfected or unrecorded and/or otherwise unperfected, of any person or entity served with the Motion on the ground that such liens are in bona fide dispute.

10.    The Court will not approve the sale free and clear of liens and interests held by unidentified parties that were not served with the Motion.

11.    The sale also includes the assignment by the Consolidated Debtor to KPB of the license agreement as identified and to the extent set forth on Schedule 2.1 (I) of the Asset Purchase Agreement, (i.e. the License Agreement by and between LSBC and the Scottish Crop Research Institute ("SCRI"), dated as of June 10, 2004 and amended as of November 1, 2005, granting a non-exclusive, worldwide, royalty-bearing license to practice the LSBC Patents in the Fungicide Field and the Insecticide Field (the "SCRI License"). The SCRI License provides that the Consolidated Debtor may freely assign and transfer the license, provided that the assignee affirms in writing its agreement to be bound by the licenses. The SCRI License was assumed by the Consolidated Debtor in the Plan, and is to be assigned to the buyer under the Asset Purchase Agreement, with the buyer assuming all obligations there under arising from the date of the assignment.

12.    The sale is conditioned upon the simultaneous Closing of the sale of the Geneware Assets (Motion FWP-43) mentioned in paragraph 18, below, and approved by this Court by separate order.

13.    The Court tentatively determined that the Consolidated Debtor did not need the

consent of The Dow Chemical Company and Dow AgroSciences, LLC (collectively "Dow") for the assignment of the Collaboration and License Agreement dated as of September 1, 1998 (as amended), with Dow Chemical and Dow AgroSciences (the "Dow License") to the Geneware buyer, provided certain mechanisms were established. However, the Consolidated Debtor and KBP reached agreement upon a consent form acceptable to Dow with the result that Dow's objection to the Motion is resolved completely by the sale of the Geneware Assets and the VCP Assets to KPB and pursuant to the terms of the consent form, a copy of which (without exhibits) is attached to the Order on the Motion.

14.    As set forth in the declarations filed in support of the Motion, the Consolidated Debtor has engaged in fair and reasonable marketing and other sale efforts and procedures in connection with the sale of the VCP Assets, which efforts and procedures have enabled the Consolidated Debtor to obtain a fair and reasonable price for the VCP Assets under the circumstances of this case. The confirmed Plan provides for the Consolidated Debtor to complete the orderly liquidation of the Consolidated Debtor's business and assets, including possible sale as a whole to one purchaser or the sale of related business units, and to distribute the proceeds consistent with the requirements of the Bankruptcy Code and orders of the Bankruptcy Court previously entered in the cases.

15.    The Consolidated Debtor employed Venturi & Company LLC ("Venturi") as its investment bankers to:

b.    Assist the Consolidated Debtor in formulating the marketing strategy related to the sale, transfer or assumption of any of the operations, assets, liabilities and/or stock of the Consolidated Debtor;

c.    Prepare information materials highlighting the investment considerations of the Consolidated Debtor and/or all of its businesses and/or assets to third parties, as appropriate;

d.    Identify, classify and contact third parties and facilitate their due diligence by responding to inquiries and providing additional information, as appropriate; and

e.    Evaluate offers, assist in negotiations and review and analyze any securities or other consideration offered to the Consolidated Debtor in connection with a sale, transfer or

assumption of any of the operations, assets, liabilities and/or stock of the Consolidated Debtor.

16.     Venturi actively marketed the Consolidated Debtor's assets since September 12, 2006. Since then, Venturi worked with the Consolidated Debtor's former officers and employees to identify potential purchasers for all of the primary asset categories listed in the Plan and Disclosure Statement.   Numerous contacts were made with most of the targeted potential purchasers.   During this process, Venturi made contacts and solicited offers from over 175 strategic and financial parties, including prospective purchasers in other countries.   Despite this extensive marketing program and the substantial efforts of Venturi, only a small number of qualified parties expressed interest in the VCP Assets.   All prospective purchasers were sent a copy of the motion to approve the sale procedures for the Motion when it was filed on or about June 15, 2007, so they have had notice since then that VCP Assets were subject to a sale motion and the opportunity to submit a bid.

17.     Since the Plan was confirmed, the Consolidated Debtor has been working diligently to solicit offers for the assets of the estate.   Each month, however, the Consolidated Debtor incurs significant costs for maintaining the Assets, rent for its offices, and fees for the investment bankers.   Given the level of interest for the VCP Assets and the ongoing operating costs, there is no further benefit to the estate by delaying the sale of the VCP Assets in the hope that some party not before the Court in connection with this Motion might be interested at a future date.   Thus, the appropriate business justification exists for the sale of the VCP Assets on the terms and conditions set forth in the APA.   The sale will generate substantial proceeds for distribution in accordance with the Plan. Thus, the sale is fair, equitable, and in the best interests of the estate.

18.     With respect to the objection filed by Dow to the Motion and the Consolidated Debtor's Motion to Approve Sale and Assignment of Certain Patents, Patent Applications and Related Assets Free and Clear of Interests Subject to Overbids and Related Relief regarding all the Consolidated Debtor's right, title and interest in and to certain patents and patent applications relating to the genetically modified plant viruses that can be used to temporarily introduce new genes into living plants so that the plants will begin manufacturing new products, including

pharmaceutical proteins or vaccines commonly known as the GENEWARE® system (the "Geneware Assets") (the "Geneware Motion"), the Court tentatively determined that the Consolidated Debtor did not need Dow's consent for the sale of the Geneware Assets but required that the Consolidated Debtor, Dow and the potential purchasers agree on a mechanism to determine which party would perform which obligations with respect to the Dow License if there were different buyers for the Geneware Assets and the VCP Assets. The Consolidated Debtor recognized that if there were different buyers for the Geneware Assets and the VCP Assets that an agreement had to be made between the two buyers such as through a four-party consent, i.e. Dow, the Consolidated Debtor, the Geneware buyer and the VCP buyer. As of the time of the Sale Hearing on October 15, 2007, no such agreement in form and substance acceptable to such parties existed.

19.    Fraunhofer was identified in the Motion as the lead bidder on the Geneware Assets in the amount of $500,000, subject to overbids. KBP and a subsidiary of Phillip Morris International ("PMI") properly prequalified to overbid on the Geneware Assets.

20.    PMI submitted a proper bid on the VCP Assets pursuant to the terms of the Motion. KPB submitted a bid for the VCP Assets but conditioned the bid on being the winning bidder for the Geneware Assets and being required to purchase both the Geneware Assets and the VCP Assets.

21.    Prior to the Sale Hearing on October 15, 2007, KBP had made a bid for the Geneware Assets and the VCP Assets in the amount of $925,000, conditioned upon the Sale Hearing proceeding on October 15, 2007, and the ability to proceed under the agreed upon three party consent to resolve the Dow objection (the "KBP Bid"). KBP had previously indicated to the Consolidated Debtor that it did not want to bid on the VCP Assets unless it was the winning bidder on the Geneware Assets and so confirmed that position on the record at the Sale Hearing.

22.    The Consolidated Debtor served and filed a status report regarding the Motion and regarding the VCP Motion on October 9, 2007 ("Status Report"), informing the Court and all parties noticed with the Motion and the VCP Motion (including Fraunhofer) of the following status as of October 9, which the Court adopts as true:

a.      That Consolidated Debtor and Dow had arrived at a form of a three-party consent acceptable to the Consolidated Debtor, Dow and KBP.  A true and correct copy of the three-party consent form (without exhibits) was attached to the exhibit document filed and served with the Status Report.  The Consolidated Debtor reported that the use of this three-party consent would allow any of the qualified bidders to bid on the Geneware and VCP assets where the purchaser of both assets is the same party.

b.      That Fraunhofer and Dow had arrived at a form of a four-party consent that is not acceptable to the Consolidated Debtor only insofar as the four-party consent is not acceptable to the sole bidder for the VCP Assets, namely PMI.

c.      That KBP had submitted an offer to purchase both the Geneware and the VCP assets for a combined purchase price of $925,000, which the Consolidated Debtor believed betters the existing bids on those assets, allows the estate to cover the break-up fee to the Fraunhofer, and allows the estate to sell both assets.  The Consolidated Debtor reported that a condition to KBP's bid was that the hearing be conducted on October 15, 2007, as KBP viewed further delays to be prejudicial.  The Consolidated Debtor reported that it agreed that further delays were prejudicial to the estate in terms of the incurrence of further costs to the detriment of the estate.

d.      That the Consolidated Debtor still was attempting to work with Fraunhofer and PMI, potential separate buyers of the Geneware and VCP assets, respectively, to arrive at an acceptable four-party consent that would allow two different buyers of the assets.  The Consolidated Debtor reported that it believed that all of the same terms of the Dow approved three-party consent would be used in a four-party consent, except for the terms of the four-party consent that essentially dealt with the relationship between the Geneware buyer and the VCP buyer.  The Consolidated Debtor reported that it was attempting to broker between Fraunhofer and PMI the terms of a four-party consent, so that a four-party consent could be available for the hearing on October 15.  The Consolidated Debtor reported that it contemplated that a four-party consent also would allow KBP to bid on any combination of assets and allow for a more competitive bidding scenario.  The Consolidated Debtor reported that it believed that a four-party

consent would allow maximum competitive bidding as the Geneware and VCP assets could be sold separately and in a competitive bidding environment.

e.    That Dow had approved KBP as an assignee of the Dow License for purposes of adequate assurance of future performance so long as the three-party consent was used. The Consolidated Debtor reported that if the form of three-party consent was not used for the sale, Dow reserved its right to object to the sale.

f.    That Dow had approved Fraunhofer as an assignee of the Dow License for purposes of adequate assurance of future performance so long as the four-party consent was used. The Consolidated Debtor reported that if the form of four-party consent was not used for the sale, Dow reserved its right to object to the sale.

23.    On October 11, 2007, PMI informed Fraunhofer and the Consolidated Debtor that it would not bid on the Geneware Assets and that it was withdrawing its bid on the VCP Assets. At that point, the only offer for the VCP Assets was the KBP bid. While further efforts were made to bring PMI back as a bidder, PMI's position did not change as of the time of the Sale Hearing on October 15, 2007. Nonetheless, PMI satisfied all of its obligations and responsibilities in connection with the proposed sales and is entitled to the return and release of its deposits.

24.    Fraunhofer objected to the KBP bid on the grounds set forth in its Objection of Fraunhofer USA, Inc. to the Status Report filed October 12, 2007.

25.    The Consolidated Debtor filed and served a declaration of the Plan Administrator, Randy Sugarman, on the morning of October 15, 2007. The declaration established the following which the Court adopts as true:

a.    The Consolidated Debtor has been working very diligently to obtain Court approval of the sale of the Geneware assets and VCP assets. The hearings have been continued for almost two months to allow the Consolidated Debtor, the various potential buyers, and Dow to arrive at an acceptable consent form to address the relatively complex issues involved in the two sales. These negotiations have included Fraunhofer.

b.    After having almost two months to attempt to negotiate a consent that

would allow for different buyers for the Geneware and VCP assets, the parties have been unable to arrive at a four-party consent that is acceptable to the Consolidated Debtor, Dow, and the potential different buyers for the Geneware and VCP assets. The unresolved issues did not involve Dow, but instead involved the relationship between Fraunhofer as a potential Geneware buyer and PMI as a potential VCP buyer.

   c. The Consolidated Debtor, Dow, and KBP have arrived at a form of three-party consent that is acceptable to all of them. KBP also has submitted a bid in the amount of $925,000 for both the Geneware and VCP assets. It is almost certain that the KBP Bid would be withdrawn if the hearing does not go forward on October 15, 2007. The reason for KBP's insistence on going forward on October 15 is related to internal funding issues.

   d. The estate has a certain sale to KBP with an acceptable consent from Dow that addresses the issues in the Court's tentative ruling on the motions. It appears, based on KBP's representations to the Consolidated Debtor, that if the hearing is continued from the October 15 date, the estate will lose the KBP Bid. If that happens, the estate would have to hope that Fraunhofer, PMI or some other unidentified potential purchaser of the VCP Assets, the Consolidated Debtor, and Dow can arrive at an acceptable four-party consent. Relying on that hope is extremely risky since those parties have not been able to arrive at a four-party consent during the almost two months that the Motion and the Geneware Motion have been pending and there is no other identified purchaser for the VCP Assets at this time.

   e. The Consolidated Debtor and all the other parties continue to incur attorneys' fees and other costs while the Motion and the Geneware Motion remain unresolved. It appears that these two motions deal with the last major assets to be sold for the estate. While the estate still has miscellaneous assets to sell, the Consolidated Debtor believes that it needs to wind down its operations as soon as possible to avoid unneeded expenses, including salaries for employees, fees for maintaining patents, rent, and other charges incurred in liquidating the estate. Until the two sale motions are resolved, these charges will continue to accrue to the detriment of the creditors. While it is true that significant overbidding on these assets could offset the additional costs, if KBP is no longer bidding for the assets, Fraunhofer and PMI or some other yet

1    to be identified purchaser of the VCP Assets have no incentive to increase their bids beyond the

2    price the estate currently has as a certainty with the sale to KBP.

3              f.         Given these circumstances, because Fraunhofer, PMI, the Consolidated

4    Debtor, and Dow were unable to arrive at a four-party consent prior to the hearing on October 15,

5    since PMI withdrew all of its bids, and since Fraunhofer was unwilling to increase its bid at the

6    hearing or show a benefit to the estate which would offset the potential loss of the KBP Bid,

7    proceeding with the KBP sale is in the best interests of the estate.    Further delays in the sale

8    risked KBP withdrawing its bid and thus no competitive bidding and no circumstance that would

9    have been more beneficial to the estate than the offer from KBP, because no better bid was made

10   at the October 15th hearing.

11         26.    The KBP Bid was subsequently increased to $975,000 at the Sale Hearing on

12   October 15, 2007, in exchange for the Consolidated Debtor's agreement to remove from Schedule

13   2.1(e)(ii) of "Carved-Out Licenses" the license described in paragraph 3 thereof.    The $975,000

14   was allocated at the Sale Hearing as $575,000 for the Geneware Assets ($550,000 for the

15   Geneware Assets with the carve-out license described in paragraph 3 of Schedule 2.1(e)(ii) in the

16   APA filed with the Geneware Motion and an extra $25,000 for the Geneware Assets without the

17   carve-out of the license described in paragraph 3 of Schedule 2.1(e)(ii)) and $400,000 for the

18   VCP Assets.

19         27.    At the Sale Hearing on October 15, 2007, the Court invited Fraunhofer to bid more

20   than $550,000 for the Geneware Assets (with the carve-out license described in paragraph 3 of

21   Schedule 2.1(e)(ii) in the APA filed with the Geneware Motion).    After recess taken to, among

22   other things, allow Fraunhofer's counsel a further opportunity to confer with their client regarding

23   a potential overbid of the KBP offer, Fraunhofer indicated on the record that it would not make a

24   further bid above the $500,000 specified in the APA.    Fraunhofer did not make any bid for the

25   VCP Assets.  PMI did not bid at the hearing, nor did any other person appear to make any bids on

26   the Geneware Assets or on the VCP Assets.

27         28.    The Official Committee of Unsecured Creditors (the "Committee") supports Court

28   approval of the KBP Bid as modified at the Sale Hearing.

FINDINGS OF FACT AND CONCLUSIONS
OF LAW RE VCP ASSETS SALE

-12-

29.    The highest and best offer to purchase the VCP Assets was the KBP Bid as modified at the Sale Hearing on October 15, 2007, to purchase the VCP Assets for a purchase price of $400,000 on the terms and conditions set forth in the APA.

30.    KBP filed a declaration of Hugh Hayden in Support of Proffer by KBP of Assurance of Future Performance of Contractual Obligations on October 12, 2007 (the "Hayden Declaration"). The Hayden Declaration set forth KBP's capability to perform under any and all executory contracts being assigned to KBP in the sales. The Court finds that adequate assurance of future performance by KBP as required by section 365 is present.

31.    KBP is unrelated to the Consolidated Debtor. The APA was negotiated, proposed, and entered into by the parties at arms-length, without collusion, and in good faith. Neither the Consolidated Debtor nor KBP has engaged in any conduct that would cause or permit the APA, or the transactions contemplated thereby, to be invalidated or avoided under 11 U.S.C. § 363(n). Under the circumstances KBP is a good faith purchaser under section 363(m).

32.    The Court finds good cause to waive the 10 day stay of interim Bankruptcy Rules 6004(h) and 6006(d) as the parties desire to close the sales as soon as possible so the estate can continue to wrap up and not incur further costs due to delay, and no party objected to such waiver at the Sale Hearing.

33.    The Court approves the Consolidated Debtor returning and agreeing to the release of any and all deposits to PMI as in the best interests of the estate and a mutual release between the Consolidated Debtor and PMI with respect to matters related to the Motion, the sale, the VCP assets, the Geneware assets and the Geneware Motion.

A proposed form of these findings and conclusions were lodged by counsel for the Consolidated Debtor. The court, while largely adopting the proposed findings and conclusions, has made some changes, largely if not entirely editorial in nature, to the lodged findings and conclusions. For the related motion, FWP-43, the court's findings and conclusions are appended to the amended minutes of the hearing.

1    Dated: _14 Nov 2007_

2

3                            UNITED STATES BANKRUPTCY COURT JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA

## CERTIFICATE OF SERVICE

   The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was served by mail to the following entities listed at the address(es) shown below.

Donna Parkinson
400 Capitol Mall #2540
Sacramento, CA 95814

Gerald Sweeney
460 Bloomfield Ave #200
Montclair, NJ 07042

Marc Levinson
400 Capitol Mall #3000
Sacramento, CA 95814-4407

Martin Weis
1735 Market St #3200
Philadelphia, PA 19103

Paul Pascuzzi
400 Capitol Mall #1450
Sacramento, CA 95814-4434

Sean Monahan
2 International Pl
Boston, MA 02110

George Hollister
3415 American River Dr #B
Sacramento, CA 95864-4417

Peter Bronson
400 Capitol Mall, 11th Floor
Sacramento, CA 95814

Scott McNutt
188 The Embarcadero
Sac Francisco, CA 94105

Stephen Gordon
30 Rockefeller Plaza
New York, NY 10112-2200

Large Scale Biology Corporation
3333 Vaca Valley Pkwy #1000
Vacaville, CA 95688

Daniel Egan
400 Capitol Mall, 22nd Floor
Sacramento, CA 95814

Office of the US Trustee
501 I St, Ste 7-500
Sacramento, CA 95814

**DATED:**   NOV 1 5 2007          **By:** _____
                                              **Deputy Clerk**

                                              Sarah Potter